# Deaton v. Deaton.

Dec. 16, 1938.

A. T. W. MANNING for appellant.
CARTER P. MOORE for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Parties to this appeal were married in 1918. Both had been previously married. In June 1935 appellant filed petition in the Jackson circuit court seeking divorce on ground of cruel and inhuman treatment. The court decreed an absolute divorce to appellee and undertook to restore some property rights in controversy.

In her petition appellant alleged that at the time of their marriage appellee owned no property, but that she was the owner of property and money, some of which was invested in the purchase of a tract of land, and though appellee paid no part of the purchase price, the deed was so executed as to vest title in the two parties. She says the conveyance was made without her knowledge or consent, and in fraud of her rights, taking the position in her pleading that appellee holds title to an undivided one-half interest as trustee, and asks the court to adjudge her title to the whole tract.

Exhibits filed show that on June 10, 1918, Jones and wife executed title bond, binding themselves to convey the land in question upon payment of $1200, of which $200 was paid, the balance to be paid in installments. In conformity with the bond deed was executed August 28, 1918, and conveyed the land to John and Sarah Deaton. Four hundred dollars then paid in cash, the balance was divided into two payments due in one and two years. The deed is in the usual and ordinary form.

In answer to the petition, after denying categorically the allegations thereof, appellee pleads affirmatively that since purchase of the land he and appellant have lived on it most of the time; that he worked diligently and regularly in building it up and improving it, so as to make a comfortable home for himself and wife; that

by his own labor and means, and at his own expense he built a dwelling house, two barns, and other buildings on the land. He says he cleared and cleaned up the land so that it was improved to such an extent that it is now worth more than double the purchase price. He alleges that he paid $820 on the purchase and appellant $380.

It is alleged that some time after he and his wife purchased the land she became dissatisfied because of the fact that they owned the land jointly, and because she had paid part of the purchase price, desired a portion of the land laid off to her. Appellee further alleges that on account of the continued display of dissatisfaction on part of appellant in regard to the alleged joint ownership, in order to satisfy her in that respect, he paid her $950 for her part of the land, and on April 27, 1927, appellant signed and acknowledged receipt of same, and undertook by writing to convey her interest in the land to appellee's sons, Elmer and Denny Deaton, reserving the right to live on said land with them during her lifetime, thereby abandoning all claim to any part of the land.

The case was submitted after a volume of depositions had been taken, the court rendering a written opinion which is made a part of the record. Omitting portions relative to matters other than the one here involved, we quote:

"Plaintiff's first husband left a farm * * * containing 150 to 200 acres * * *. She had one mule, eight head of sheep, five hogs and 100 chickens at the time of her last marriage. She also had a lot of corn, hay, canned fruit and other farm products; she received as a compromise for the negligent death of her husband about $350.00 to $400.00. She says she had $485.00 when she married defendant. Of this amount $200.00 was loaned to one Carmack, but paid back to her after her marriage.

"At the time of their marriage defendant owned but little property; $14.00 in money, some corn, meat and farm products, two head of sheep and a heifer, all of which was brought to the farm owned by plaintiff's husband at the time he died. From the date of their marriage until they moved to Cincinnati, they lived on the farm about four years. On June 10, 1918, hardly two months after their marriage, the parties purchased the farm in

this county at the price of $1200.00. Plaintiff claims she paid the down payment (this was on title bond) and all of the $400.00, second payment on the land, and also the remainder of the purchase price, from produce and stock raised on the farm. Defendant claims he paid $75.00 of the first $200.00 payment, $145.00 of the $400.00 payment, and the balance due. He claims he paid all for the Jones farm, except $380.00.

"The deed was made to them jointly. Defendant claims he purchased plaintiff's interest in 1927, and paid her $950.00 for it, and she signed a written contract by which she agreed to convey the land to defendant's two sons. Plaintiff's contention is that he paid her the $950.00 to make her even with him, from their joint bank account, when he bought another tract of land; she claims that she did not sign any writing, though all but admits receiving the $950.00, and endorsed check for that amount.

"The parties lived upon the farm belonging to her husband's estate (with their children) cultivated and had the proceeds thereof for about five years. Plaintiff had one child most of the time, and defendant three. In 1923 they moved to Cincinnati; the Jones farm was rented, and the products of the farm delivered to them, or sold and the proceeds delivered to defendant. Both the farms were rented after they went to Cincinnati, and the rents were jointly used by them, but one year the rent of $130.00 was paid to defendant. It is presumed that this accumulation was used to live upon and pay for the Jackson County land. They each worked after going to Cincinnati, where they lived about four years. They rented property, kept boarders, and the evidence shows they worked hard and saved considerable money from their labors, but there is no definite showing of what was done with the rents and profits of the two farms, but it is clear that it was used to live on, and liquidate the debt for the farm purchased.

"It is shown that from one company, plaintiff worked out $933.05, and also worked for two other companies, but the amount received is not clear. This was deposited in the bank to their joint account, but no one has seen fit to produce the records

to ascertain just how and when the deposits were made.

"Defendant says he worked out between four and five thousand dollars in Cincinnati. He received $165 from his mother's estate, and thinks that went toward the first or second payment on the Jackson County farm. There was no division of his mother's property until after 1922. The joint account in the Newport bank, on April 2, 1927, was $3539.69. Defendant claims all this was his, and no part of her money was deposited to this account. She says it was, and is corroborated by Combs and others.

"Defendant claims that while in Cincinnati and thereafter he paid $950.00 to plaintiff, and $950.00 payment on the Nantz land, which he bought; he bought improvements he put on the farm, $1750.00; barn $200.00; paid on the farm $870.00; stoves, furniture, etc., $309.85, making a total of $4979.85. That he paid house rent in Cincinnati of $20.00 per month, for four years, which would run the amount spent by him to approximately $7,000.

"The plaintiff has received $950.00, shown by defendant's check, and has other money, according to the evidence, which amounts to about $1700.00; she does not say how much, but does not deny the $1700.00."

Without quoting further at this point, the court recited that defendant, during the time they were in Cincinnati, had paid for improvements on the farm, building of barn, a total of about $2,000. We are not concerned ourselves with living expenses, rent, etc., as set out in the opinion, nor with the amount paid on the Nantz farm or the $950 paid to the wife, or as to the finding that appellant had received the $950, and has other money amounting to $1700.00. These items may have been mentioned in consideration of restoration of personal property, which matter is not before us.

The court said in speaking of the $950 paid by appellee to appellant April 27, 1927:

"The court is not an expert on handwriting, but from a close examination of the writing on the check and on the writing in evidence (contract) the

court is not prepared to say she did not sign both of them.''

Again quoting from the opinion of the court:

''The farm when purchased was valued at $1200.00, and it is worth that; defendant says he improved the land * * * to the amount of approximately $2,000, so that it should be worth approximately $3,000.

''The court is of the opinion that the claim of plaintiff to the entire farm in Jackson County, free from any claim of the defendant, cannot be so adjudged. To a great extent, what the parties have accumulated, has come about by their joint efforts, each entering heartily into work to that end.

''Earnings of the parties and their property holdings have been so intermingled, that it is hard to determine what should be done in order to bring about an equitable division. After giving much thought and consideration to all the facts and circumstances, the court has reached the following conclusion:

''Plaintiff has the $950.00 paid to her, and in addition has about $750.00, making a total of $1700.00. It is admitted she paid into the Jones farm $380.00, but the court doubts that she did not pay more than that sum in money. Her farm in Owsley County was used for four or five years, and the proceeds either went into the Jones farm or the support of the parties and their families, while they were making money to pay for it, and counting that at reasonable rent would make $600.00 that she is at least entitled to on that score, making a total of $2300.00 to her.

''The defendant has the Nantz farm, $950.00. To give him an interest of $600.00 in the Jones farm, as having been paid by him on the purchase price, and the improvements thereon to the amount of $200.00 (evidently meant for $2,000) would make him a $2600.00 interest, but the court is of the opinion that the value of the improvements is placed too high, and that $1500.00 is a reasonable estimate, giving him a $2100.00 interest in the Jones farm. The court is of the opinion that each party should have a lien against the Jones farm for their respective interests.''

Notwithstanding the court apparently found facts which would result in an almost equal division of the Jones farm, when judgment was entered it was adjudged that "the plaintiff and defendant are the joint owners of the land in the following proportions: To the plaintiff an undivided 6/21 or 2/7, and to the defendant 16/21 or 5/7, in accordance with the written opinion of this court, and each party is adjudged a lien to secure the interests adjudged."

It is difficult for us to reconcile the judgment with the opinion. It is possible that the court intermingled some items of property which should not have been considered on the question of respective interests in the real estate.

Evidently the court, though expressing the belief that appellant signed the contract whereby she acknowledged receipt of the $950, and agreed to convey the land to appellee's two sons, holding a life estate in herself, did not find the latter paper to be more than a receipt for $950. These papers are not in the record except by typed copies. Therefore we cannot disagree with the court on his conclusion that she signed both. However, when we examine the joint bank account, and the exhibits filed, and consider the evidence relating to this transaction, it is more than likely that appellant's version of it is the more plausible, and this transaction (which is somewhat cloudy) should in no wise enter into or affect the respective claims in the real estate.

The court evidently found that there was no fraud practiced in procuring the deed to be made jointly. We agree with his finding. It is apparent that appellant knew all about the making of the deed in that manner. She does not claim that it was to be made to her, because she was to pay for it. Her only claim is that she thought it was to be so made as that remainder interest would not go to appellee's children. This did not occur to her until marital difficulties arose.

It is clear from the proof that the purchase of the farm was a joint enterprise, and was so treated until difficulties arose. It is fairly to be determined from the evidence that appellant paid the first $200 on the title bond and, perhaps, the greater portion of the payment in August 1918, when the deed was delivered, at which time she said she borrowed a portion of that payment. The third payment is not established as having been

made by her. The last payment due in 1920 was not paid until 1925, because of some law suit involving this land.

In the meantime, though appellee had started out on the journey with little or nothing, the proof shows that he earned some money by his various efforts, and had accumulated a little over $700 as early as 1923; in 1927 the joint bank account was approximately $3500. This account was opened in 1924, though, as the court remarked, the dates of deposits were not known. Appellant was only able to show definitely $993 earned, but from the proof it can be safely said she earned more, though appellee's earnings appear greater.

On January 14, 1929, appellant had on deposit $1200; this included the $950 paid her by appellee out of the joint account, at which time (April, 1927) he drew for himself $550.

As we have carefully read the evidence, meager on the point here involved as it is, and thoroughly contradictory, we cannot escape the conclusion that the payments on the purchase price were so made as to result in equal ownership.

As to the improvements, which the court apparently finds to have been made by appellee, and considered in reaching his conclusion—as expressed in the judgment—the same comment is applicable. Appellant says she paid for all, or the greater portion thereof. Appellee says he paid all but $18 or $20. We are of the opinion that the proof is such as to lead to the conclusion that such improvements were made from money resulting from the joint labors of the two parties; from what they treated as common funds, with perhaps a little to the advantage of appellee's side of the ledger, which would, in a measure, balance the initial payments made on the Jones farm.

We have concluded that in fairness to both parties, and applying the principles of equity, that each of the parties is entitled to an undivided half interest in the Jones farm, and the judgment is reversed with directions to set aside the judgment appealed from, insofar as it decrees a 2/7 and 5/7 division, and enter an order decreeing to each party a one-half undivided interest, with lien, as in the former judgment provided.

Judgment reversed.